

FILED
MAR - 1 2017
CLERK, U.S. DISTRICT COURT
NORFOLK, VA

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

UNITED STATES OF AMERICA,

v.

ERIC CHARLES MURRAY,

Defendant.

CRIMINAL NO. 4:16cr64

OPINION

On February 28, 2017, this Court sentenced Eric Charles Murray ("Defendant") to a term of imprisonment of 88 months. At the sentencing hearing on February 28, 2017, this Court made two findings with respect to Defendant's criminal history and acceptance of responsibility, as represented in the Presentence Investigation Report ("PSR"). ECF No. 25. The finding with respect to Defendant's criminal history represented a downward departure pursuant to United States Sentencing Guidelines ("USSG") § 4A1.3. These findings also altered the applicable Sentencing Guidelines range for the Defendant; accordingly, the Court sentenced the Defendant within this revised Guidelines range. This opinion elaborates on the Court's reasons for its findings and is to be filed simultaneously with the sentencing judgment order.

I.  PROCEDURAL BACKGROUND

On September 12, 2016, Defendant was named in a nine-count indictment charging him with Conspiracy to Commit Bank, Mail & Wire Fraud, in violation of 18 U.S.C. § 1349 (Count 1); Mail Fraud, in violation of 18 U.S.C. § 1343 (Count 2); Bank Fraud, in violation of 18 U.S.C. § 1344 (Counts 3-5); Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A (Counts 6-8); and Possession of a Firearm by Convicted Felon, in violation of 18 U.S.C. § 922(g)(1) (Count 9).

1

ECF No. 1. On November 15, 2016, Defendant pleaded guilty to Counts 1, 7, and 9, pursuant to a written plea agreement with the Government. ECF No. 21.

## II. FACTUAL BACKGROUND

According to the Statement of Facts, beginning in April 2016, Defendant and a co-conspirator purchased from several Internet websites, without lawful authorization, the numbers of financial institution accounts belonging to actual individuals. Defendant and the co-conspirator then re-encoded and re-embossed prepaid/gift cards with the unlawfully purchased credit or debit card numbers with equipment in a home forgery lab. They then used these cards to make unauthorized purchases. ECF No. 22. In two searches of his home, law enforcement also recovered two guns, one registered to his wife and the other reported stolen. PSR, ECF No. 25, at 10–14.

On May 25, 2016, Defendant was arrested and charged with state offenses in Newport News and Hampton based on the same offense conduct. He was being held without bond in Hampton after his arrest in May on a charge of Violent Felon in Possession of a Firearm. The Commonwealth Attorney's Offices of Newport News and Hampton withdrew the state charges in favor of federal prosecution of the same on September 13 and 14, 2016. On September 15, 2016, Defendant was arrested and made his initial appearance for federal offenses. ECF No. 11. See also PSR, ECF No. 25, at 10 –14.

Jail calls between Defendant and his father prior to his indictment for the federal arrests revealed that he discussed strategies for being acquitted of the then-pending state charges (including having Defendant's wife "take" the firearm charges). Id. at 15. Defendant later admitted to possessing one of the guns. Defendant had previously been convicted of felonies with terms of imprisonment exceeding one year and had not had his gun rights restored. Id. at 14.

## III. THE PRESENTENCE INVESTIGATION REPORT

The PSR prepared by the Probation Office determined that Defendant's total offense level was 26. PSR, ECF No. 25 ¶ 69. With respect to Count 1, Conspiracy to Commit Bank, Mail, and Wire Fraud, the base offense level was determined to be 7 (pursuant to USSG § 2B1.1(a)(1)). Defendant then received enhancements for (1) loss exceeding $150,000, +10 (pursuant to USSG § 2B1.1(b)(1)(F)); (2) an offense involving 10 or more victims, +2 (pursuant to USSG § 2B1.1(b)(10)(C)); (3) employing sophisticated means, +2 (pursuant to USSG § 2B1.1(b)(10)(C)); and (4) employing device-making equipment or involving the unauthorized transfer or use of any means of identification unlawfully to produce or obtain any other means of identification, +2 (pursuant to USSG §§ 2B1.1(b)(11)(A)(i) and 2B1.1(b)(11)(C)(i)). The adjusted offense level for Count 1 was 23. Id. ¶¶ 46–54.

Count 7, Aggravated Identity Theft, resulted in an offense level of 0, USSG § 2B1.6, but carried a mandatory 24-month consecutive sentence. Id. ¶¶ 55–56.

With respect to Count 9, Possession of a Firearm by a Convicted Felon, the base offense level was 20. USSG § 2K2.1(a)(4)(A). Defendant also received (1) a +2 enhancement for a stolen firearm, pursuant to USSG § 2K2.1(b)(4)(A), and (2) a +2 enhancement for obstruction of justice, pursuant to USSG § 3C1.1. The adjusted offense level for Count 9 was determined to be 24. Id. ¶¶ 57–62.

Based on adjustments for multiple counts, Defendant's combined adjusted offense level was determined to be 26. Defendant did not receive a downward adjustment for acceptance of responsibility because an enhancement for obstruction of justice generally demonstrates lack of acceptance of responsibility. Id. ¶¶ 63–69.

The PSR also determined that Defendant's Criminal History Category was IV. Id. ¶¶ 77–79. With an offense level of 26 and a Criminal History Category of IV, the Guidelines

recommended a sentence of 92 to 115 months, in addition to 24 months consecutive for the 18 U.S.C. § 1028A conviction.

Defendant presented two objections to the PSR and one motion for a downward departure pursuant to USSG § 4A1.3(b) in his Position on Sentencing: (1) Defendant objected to the loss amount attributed to him, ECF No. 27, at 2; (2) Defendant objected to the lack of adjustment for acceptance of responsibility, id. at 4; and (3) Defendant asked that the Court depart downward and find Defendant's Criminal History Category to be a III, rather than a IV, id. at 11.

Only the objection to the lack of adjustment for acceptance of responsibility and the motion for downward departure affected the Guidelines range because, pursuant to USSG § 3D1, the gun possession charge drove the total offense level. At the sentencing hearing, the Court found that the Defendant had accepted responsibility. PSR, ECF No. 25 ¶¶ 43, 44, 61, 119. The Government then moved for an additional 1-point adjustment for acceptance of responsibility, resulting in a reduction of 3 points to the offense level from 26 to 23. The Court also granted Defendant's motion for a downward departure, and found that the Defendant had a Criminal History Category of III, rather than IV. The Court sustained, however, the loss amount attributed to the Defendant. See id. ¶¶ 22, 41, 47, 119. Accordingly, with a Criminal History Category of III and an offense level of 23, the recommended Guidelines range was 57 to 71 months, as well as 24 months consecutive for Count 7.

### A. ACCEPTANCE OF RESPONSIBILITY

Defendant objected to the Probation Officer withholding an adjustment for acceptance of responsibility. ECF No. 27, at 4. The Probation Officer withheld such an adjustment because his offense level was also increased by 2 levels for obstruction of justice (pursuant to USSG § 3C1.1) with respect to Count 9, his possession of a firearm as a felon. In August 2016, Defendant's wife, Mrs. Murray, testified before the grand jury that Defendant told her to tell the

police that the guns recovered from the Defendant's residence belonged to her in order for her to take the gun charges. This request occurred on more than one occasion. She also testified that he told her that he would take care of her after her release from jail, and that when she went to visit Defendant in jail, Defendant would not say anything on the jail phones about the guns and instead instructed her to speak in code. Furthermore, during jail calls between the Defendant and his father, Defendant spoke with his father about having Mrs. Murray take responsibility for the firearms recovered from the residence. Based on this information, Defendant's offense level was enhanced because he attempted to suborn perjury by having his wife tell law enforcement officials that the firearms recovered belonged to her. PSR, ECF No. 25, at 43–44; see also id. ¶¶ 43, 44, 61, 119.

USSG § 3E1.1 n. 4 advises that conduct resulting in an enhancement because of obstruction or impeding of justice "ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct." Accordingly, the PSR did not reduce Defendant's offense level by 2 points for acceptance of responsibility. Id. at 43–44.

However, USSG § 3E1.1 n. 4 further notes that "[t]here may, however, be extraordinary cases in which adjustments under both §§ 3C1.1 and 3E1.1 may apply." Thus, adjustments for both obstruction of justice and acceptance of responsibility are not always mutually exclusive. The Fourth Circuit has not "explicitly defined what circumstances amount to such an 'extraordinary case' but has reviewed the facts on a case-by-case basis." United States v. Endicott, 9 F. App'x 179, 180 (4th Cir. 2001). The Fourth Circuit has previously reversed a district court's (1) granting of an acceptance of responsibility adjustment for a defendant who, post-indictment and post-guilty plea, consistently failed to appear at judicial proceedings, requiring that he be re-arrested and (2) failure to apply an obstruction of justice enhancement

5

following his re-arrest. United States v. Hudson, 272 F.3d 260, 263 (4th Cir. 2001).

Defendant conceded that the obstruction of justice enhancement was properly applied, ECF No. 27, at 5, but argued that he should also have received an adjustment for acceptance of responsibility. In support of this, he advised that the relevant obstruction conduct occurred prior to federal indictment, and that once notified of the federal indictment, he waived his rights and talked with the federal agents, and never attempted to impede their investigation. See PSR, ECF No. 25, at 43; see also ECF No. 27, at 4–6. He also advised that he provided a statement to the Probation Officer admitting his involvement and accepting responsibility, cooperated with law enforcement after being federally indicted, and pled guilty. ECF No. 27, at 6. The Probation Officer also noted this in the PSR. PSR, ECF No. 25, at 44.

The Government also acknowledged the obstructive conduct occurred prior to Defendant being charged in the instant federal case. The Government noted that since the charges were brought, Defendant had acted in a manner considered consistent with acceptance of responsibility, including waiving his Miranda rights after being taken into federal custody, agreeing to speak with investigators, giving detailed information about the charged offenses, entering a timely plea of guilty, agreeing to restitution, and reaffirming his involvement in the instant offense. ECF No. 28, at 15–16.

As both the Government and Defendant acknowledged that all of Defendant's post-indictment actions were consistent with acceptance of responsibility, the Court found at the hearing that the Defendant had accepted responsibility and qualified for a 2-level reduction for acceptance of responsibility. The Government then moved for an additional reduction pursuant to USSG § 3E1.1(b) as Defendant's plea was timely. With the 3-level reduction applied to the previously-determined total offense level of 26, the Court found that Defendant's total offense

level to be 23.

B. CRIMINAL HISTORY CATEGORY

Defendant also argued that the Court should depart downwards, pursuant to USSG § 4A1.3, and find Defendant's Criminal History Category to be a III, rather than a IV.

A departure may be given if the criminal history category substantially overrepresents either (1) "the seriousness of the defendant's criminal history" or (2) "the likelihood that the defendant will commit other crimes." USSG § 4A1.3(b)(1). The Fourth Circuit has noted that criminal history is "one of the most flexible concepts in the guidelines" because of the difficulty of precisely evaluating the "countless possible permutations of criminal history." United States v. Adkins, 937 F.2d 947, 952 (4th Cir. 1991). "The Sentencing Commission recognized this difficulty, and . . . it specifically identified overstatement or understatement of the seriousness of the defendant's past conduct as a ground for departure from the raw criminal history score." Id.

In United States v. Nelson, 166 F. Supp. 2d 1091, 1093 (E.D. Va. 2001), Judge Gerald Bruce Lee of this District granted a motion for a downward departure of three levels from Category VI to III because of an overstatement of the defendant's criminal history. The defendant had previously been convicted of possession of marijuana, malicious wounding, failure to return videos, escape from custody and damage to a police vehicle, trespassing, driving as a habitual offender, reckless driving, driving on a suspended license, and speeding to elude police, resulting in a Criminal History Category of VI. Id. Judge Lee found, however, that the criminal record "[did] not reflect the history of narcotics distribution and violent behavior present" in cases before him that typically fell within Category VI. Id. at 1097. Similarly, Judge Lee found that the defendant's criminal history category did not align with Category V cases, which usually involved firearms or drug distribution or "deviant sexual behavior," id. at 1098, or Category IV cases, which generally involved "narcotics possession charges, fraud, and violent

7

offenses," id. Instead, Judge Lee found the defendant's criminal history to be more aligned with Category III histories, which typically included "small caliber drug charges, such as possession of marijuana or paraphernalia" and "other minor offenses, such as trespassing and traffic infractions." Id. at 1100.

Furthermore, Judge Lee explained that:

> When determining what Criminal History Category is appropriate, this Court concludes that Defendant's minor non-violent offenses and traffic infractions artificially inflate the seriousness of his prior criminal record. Judges may exclude minor offenses that yield negligible punishment. See United States v. Francis, 129 F. Supp. 2d 612, 620 (S.D.N.Y.2001) (stating that "the addition of one point for a minor offense for which a Defendant received a sentence of time served may overstate the seriousness of Defendant's criminal history"); see also United States v. Paulino–Duarte, 2001 WL 290047 (S.D.N.Y. Mar. 26, 2001) (holding that misdemeanor offenses that totaled twenty days incarceration and time served are legitimate factors for downward departure). Here, Defendant received a $100 fine and ninety days incarceration, eighty days suspended (ten days of incarceration), for his April 1995 conviction for driving under a suspended license and possession of marijuana.

Id. at 1096.

Defendant's criminal history is as follows: in 2003, when he was a senior in high school, he was convicted of two counts of attempted robbery and one count of use of a firearm during the commission of a felony. He was sentenced in 2004 for these convictions to 10 years of imprisonment, with 9 years suspended (conditioned upon remaining on good behavior for 25 years). PSR, ECF No. 25 ¶ 73. In 2007, Defendant was convicted of (1) driving with a suspended license, for which he received 30 days of jail, suspended (conditioned upon remaining on good behavior for 2 years) and (2) improper driving, for which he received no jail time. Id. ¶ 74. In 2009, Defendant was convicted of (1) possession of marijuana, for which he received 30 days of imprisonment, suspended (conditioned upon remaining on good behavior for 1 year), and (2) speeding, for which he received no term of imprisonment. Id. ¶ 75.

In the PSR, Defendant received 3 points for his 2004 convictions, 1 point for his 2007

convictions, and 1 for his 2009 possession conviction. Id. ¶ 77. The Probation Officer noted that the criminal convictions resulted in a subtotal criminal history score of 5, or a Criminal History Category of III. Id. However, because the Defendant committed the instant offense while under a 25-year sentence for the attempted robbery, 2 points were added pursuant to USSG § 4A1.1(d), bringing his score to 7 and Category to IV. Id. ¶¶ 78–79.

Defendant argued that the assigned Category of IV substantially overrepresented the seriousness of his criminal history. Of the prior offenses for which he received criminal history score points, two were misdemeanors, the last of which was committed in 2009. He also argued that granting a downward departure would further the Sentencing Commission's intent: USSG § 4A1.3 n. 3 provides that "a downward departure from the Defendant's criminal history category may be warranted if, for example, the defendant had two minor misdemeanor convictions close to ten years prior to the instant offense and no other evidence of prior criminal behavior in the intervening period." In this vein, Defendant argued that he had not committed any other offenses in the period between his arrest for the instant offense and 2009, when he was convicted of possession of marijuana. ECF No. 27, at 12.

In addition, Defendant argued that the 2007 driving misdemeanor would not have been counted as a point towards the criminal history score but for the imposition of a 2-year term of good behavior, rather than a 1-year term. See USSG § 4A1.2(c)(1). Defendant further argued at the hearing that the difference between a 2- and a 1-year term was arbitrary and, accordingly, the point for the driving offense should effectively be disregarded. If this were the case, Defendant advised that—even with the 2-point addition for the instant offense occurring while under the 25-year term for the 2004 felonies—his criminal history score would have been a 6. This would have resulted in a Criminal History Category of III.

The Court, after consideration of Defendant's criminal history, the commentary from the Sentencing Guidelines, and Judge Lee's opinion, agreed with Defendant and found that a Criminal History Category of IV substantially overrepresented Defendant's criminal history. First, the Court noted that the Probation Officer had previously determined that Defendant's criminal history score was 5 points, but added 2 points only because Defendant was still under the 25-year-long sentence of good behavior for the 2004 convictions. Were it not for the 25-year sentence, Defendant's criminal history score would have been a 5, and his Criminal History Category would have been a III. Furthermore, the other convictions for which Defendant received a criminal history score point were misdemeanors, one of which would not have been given a point were it not for the condition imposing 2 years, rather than 1, of good behavior.

Second, the last conviction—a misdemeanor for possession of marijuana—occurred in 2009, and there was no record of any other convictions in the intervening period between then and Defendant's arrest for the instant offense. Thus, granting the downward departure would effectuate the Sentencing Commission's intent, as explained in USSG § 4A1.3 n. 3.

Finally, in light of Judge Lee's opinion, the Court concluded that a Criminal History Category of IV also overstated Defendant's criminal record as his record did not contain multiple narcotics possession, fraud, and, violent offense convictions, or a similarly serious range of offenses.

Accordingly, the Court found that a Criminal History Category of IV substantially overstated Defendant's criminal history and found Defendant to have a Criminal History Category of III. Given the Criminal History Category of III and the total offense level of 23, the Court found Defendant's advisory range to be 57 to 71 months, plus 2 consecutive years.

## IV. THE DEFENDANT'S SENTENCE

To determine an appropriate sentence, this Court "must first calculate the Guidelines

range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors, 18 U.S.C. § 3553(a), explaining any variance from the former with reference to the latter." Nelson v. United States, 555 U.S. 350, 351 (2009).

Section 3553(a) requires this Court to consider factors in addition to the need for deterrence in order to arrive at a sentence "sufficient, but not greater than necessary" to comply with the purposes of §3553(a)(2). Section 3553(a) provides in the relevant subsections that:

> The court, in determining the particular sentence to be imposed, shall consider--
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed--
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; . . . . .
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

Following the above-described findings, the Court determined that the Defendant had a Criminal History Category of III and a total offense level of 23. The Guidelines recommended a range of 57 to 71 months of imprisonment, in addition to the 24 months consecutive for the Aggravated Identity Theft conviction. Following a consideration of the Section 3553(a) factors, the Court determined that a sentence of 88 months, with 64 months for Count 1; 24 months for Count 7, consecutive to all other counts; and 64 months for Count 9, concurrent to Count 1, was sufficient but not greater than necessary to serve the Section 3553(a) factors.

## V. CONCLUSION

For the reasons stated herein, the Court imposed a sentence of 88 months of imprisonment, which fell within the adjusted Guidelines range and which this Court found to be sufficient but not greater than necessary to comply with the 18 U.S.C. § 3553(a) factors.

The Clerk is **DIRECTED** to forward a copy of this Opinion to all Counsel of Record.

/s/
Robert G. Doumar
Senior United States District Judge
UNITED STATES DISTRICT JUDGE

Norfolk, VA
March 15, 2017